**In re Anonymous No. 22 D.B. 88**

Disciplinary Board Docket No. 22 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

ECKELL, *Member,* November 19, 1991—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the

Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent, [   ], born in 1947, was admitted to the practice of law in the Commonwealth of Pennsylvania in October of 1972. Respondent currently resides at [   ].

On April 23, 1987, in the Court of Common Pleas of [A] County, respondent was convicted of three counts of unlawful possession of a controlled substance in violation of 35 P.S. §§780-113(A)(30), and one count of possession of drug paraphernalia in violation of 35 P.S. §§780-113(A)(32). On August 26, 1987, in regard to the delivery charge, respondent was sentenced to 6 to 23 months imprisonment with work release, a fine of $1,200 or in lieu thereof, 400 hours of community service work and restitution of $100. On the possession charge, respondent was given a suspended sentence with probation for one year and a fine of $300 in lieu thereof, 100 hours of community service.

By opinion and order filed November 10, 1988, the Superior Court of Pennsylvania reversed respondent's criminal conviction and remanded the case for a new trial. On May 11, 1989, Judge [B] accepted the respondent's plea of guilty pursuant to 35 P.S. §§780-117 also known as section 17. Respondent was placed on probation without a verdict for a period of 36 months, which was subsequently reduced to 24 months by order dated June 8, 1989. Respondent was also fined $1,200

or in lieu thereof, 400 hours of community service and restitution of $100. On the possession charge, respondent was placed on one-year probation to run concurrently. Pursuant to respondent's 35 P.S. §§780-117 plea, upon fulfillment of the terms and conditions of probation. Respondent may petition the court for expungement of his record.

In the interim, respondent timely notified the Office of Disciplinary Counsel of his original conviction. As a result, respondent was placed on suspension pursuant to Rule 214(d) Pa.R.D.E. by order of the Supreme Court of Pennsylvania dated March 4, 1988. On August 28, 1989, Office of Disciplinary Counsel filed a petition for discipline against respondent in which it was alleged that respondent's conduct constituted a violation of D.R. 1-102(A)(3) (conduct involving moral turpitude), D.R. 1-102(A)(5) (conduct prejudicial to the administration of justice), and D.R. 1-102(A)(6) (conduct that adversely reflects on his fitness to practice law). On February 9, 1990, respondent through counsel, [C], filed an answer to the petition for discipline. In his answer, respondent admitted the underlying factual basis for the conviction and admitted a violation of D.R. 1-102(A)(6). By new matter, respondent raised in mitigation the circumstances of his drug and alcohol addiction and his subsequent rehabilitation.

On September 21, 1989, the matter was referred to Hearing Committee [ ], but subsequently reassigned on March 27, 1990, to Hearing Committee [ ] comprised of [ ], [ ] and [ ]. A hearing was held on May 22, 1990. On November 30, 1990, the Hearing Committee filed its report in which the committee recommended that respondent be suspended from the prac-

tice of law for a period of three years retroactive to March 4, 1988, the date on which respondent was placed on suspension by the Pennsylvania Supreme Court. Neither the Office of Disciplinary Counsel nor respondent filed a brief on exceptions to the report and recommendation of the Hearing Committee. The matter was adjudicated by the Disciplinary Board at its scheduled meeting on January 4, 1991.

## FINDINGS OF FACT

In 1969, respondent earned an undergraduate degree in Political Science from [D] College in [E], Pennsylvania. Respondent graduated from the [D] School of Law, located in [E], Pennsylvania, in 1972 and was admitted to the practice of law in the Commonwealth of Pennsylvania in October of 1972. Respondent was also admitted to practice in the U.S. District Court for the [ ] District of Pennsylvania. After graduating from law school, respondent served as a law clerk for the Honorable [F], who was the president judge of the Court of Common Pleas of [A] County. Respondent retained the law clerk position until the summer of 1974 when he became a full-time assistant district attorney in the [A] County District Attorney's Office. In 1976, respondent left the District Attorney's Office and accepted the position of part-time chief public defender of [A] County, which he held until 1980. While employed in the capacity of assistant district attorney and chief public defender, respondent handled numerous criminal matters, including drug offenses. In 1980, respondent formed a partnership in [G] with two other attorneys which was known as [ ]. The partnership was dissolved in 1982 at which time respondent became

a sole practitioner. Respondent practiced law as a sole practitioner in [G], Pennsylvania from 1982 to 1987 at which time he voluntarily ceased practicing law.

During the time respondent practiced law, he was a member of the Pennsylvania Bar Association, American Bar Association and the [A] County Bar Association. Respondent was an active member of the [A] County Bar Association; he served as the committee chairman of the Public Relations Committee, served on the Budget Committee and on the Bench-Bar Committee. During his years as a practicing lawyer, respondent lectured at the Pennsylvania Bar Institute continuing legal education courses and gave lectures at various colleges in the area to students studying constitutional law and the criminal justice system. Respondent worked with both [A] College and [G] Area Community College in regard to the colleges' intern and student share programs. Respondent was active in politics. In 1978, respondent ran for the Pennsylvania State Assembly and in 1983 respondent ran for district attorney of [A] County. However, both bids were unsuccessful.

Respondent is a recovering alcohol and drug addict. During the pertinent time of his arrest, respondent was addicted to drugs and alcohol. Respondent's problem with alcohol began in the late 1960's and became serious in 1982 when he began drinking on a daily basis at the end of each work day. In 1982, respondent began using marijuana and/or cocaine to enhance the affect of the alcohol. By the time respondent was arrested in March of 1985, respondent was using cocaine on a weekly basis. Despite his arrest, respondent continued using drugs and alcohol until September of 1986. At

the same time respondent was abusing drugs and alcohol in the period from 1982 to 1985, respondent also was engaged in the practice of law. Although respondent experienced success in his practice of law, he admits that he could have done a better job had he not been using the drugs and alcohol. Respondent has no prior disciplinary record nor has he ever been sued for legal malpractice.

The circumstances which led to respondent's arrest began in the early 1980's when respondent met a woman named [H]. Respondent began representing Mrs. [H] and her husband in regard to various business matters and subsequently respondent represented Mrs. [H] in her divorce. At this time, respondent became aware that Mrs. [H] was a cocaine dealer. Between 1982 and 1984, respondent purchased cocaine from Mrs. [H] for his own personal use. In July of 1984, respondent gave Mrs. [H] a gram of cocaine in lieu of payment of $100 that he owed her for cocaine. Respondent testified that he did not have the money at the time. On March 15, 1985, Mrs. [H] asked respondent if he knew where she could get some cocaine for her boyfriend's birthday the next day. Respondent perceived this situation as a prime opportunity to secure a future supply of cocaine. Respondent knew Mrs. [H] dealt in cocaine and brought large amounts into the area. He believed that if he did Mrs. [H] a favor on this occasion, she would return the favor at a later date when she received her normal supply of cocaine. Thus, on March 15 and 16, 1985, respondent sold to Mrs. [H] a little less than a half gram of cocaine on each date at $45 per half gram. Respondent obtained one half of the amount of cocaine from the supply

he kept at home and the other half from his current supplier. With the exception of selling cocaine to [H] on these two occasions, respondent never sold cocaine to anyone else, but did share cocaine with his friends.

On approximately March 18, 1985, respondent was arrested and on April 23, 1987, convicted of possession and delivery of a controlled substance. News of respondent's arrest and subsequent criminal proceeding was publicized in the [G] and [ ] newspapers. As a result of the conviction, respondent was sentenced to 6 to 24 months of incarceration. Respondent served four months in the [A] County prison on work release before his conviction was subsequently reversed by the Superior Court. Thereafter, the court approved respondent's petition for treatment in lieu of a sentence pursuant to section 17 of the Controlled Substance, Drug, Device and Cosmetic Act. Respondent is presently on probation until May of 1991. When respondent completes his probation, he may petition the court for expungement of his record.

Following his conviction, respondent timely notified Office of Disciplinary Counsel of his conviction pursuant to Rule 214 Pa.R.D.E. Respondent was immediately suspended from the practice of law by order of the Pennsylvania Supreme Court dated March 4, 1988. However, respondent actually ceased practicing law in June of 1987. Respondent has not sought to petition the Supreme Court of Pennsylvania to lift his interim suspension, despite the reversal of his conviction.

Prior to respondent's conviction and subsequent reversal, on September 26, 1986, respondent entered an

in-patient drug and alcohol treatment at [I], a chemical dependency treatment facility located in [ ], Pennsylvania. [J], director of [I], certified that respondent had successfully completed the inpatient program at [I] on November 6, 1986. From the time respondent entered [I] on September 21, 1986, to the present time, respondent has never had an alcohol drink or used a controlled substance.

Following his release from [I], respondent continued his therapy through out-patient counseling with a group called "[K]," located in [G]. When the "[K]" went out of business in April of 1987, respondent was counseled by Reverend [L], chief minister of [M] Episcopal Church in [G]. Reverend [L] is certified as a clinical member counselor of the American Association of Pastoral Counselors. In 1988, respondent was also attending counseling sessions at the [ ] House, but stopped attending in July of 1988 when the staff indicated that he no longer required out-patient counseling. Respondent became a member of Alcoholics Anonymous of which he is now treasurer and a member of the Public Information Committee. Respondent attends Alcoholics Anonymous meetings once a week.

From 1988 to the present time, respondent has dedicated much time and effort to helping others who are suffering from drug or alcohol addiction and other related problems. Respondent is on the board and is a volunteer worker at the [ ] Center, a pre-release treatment facility for women waiting for parole. Respondent helps the women deal with their addiction and become integrated members of society. Respondent is also active with the [M] Episcopal Church. Respondent delivers an annual sermon on the subject of

alcoholism and holds himself out as a resource person for church members who have problems with alcohol and drugs. Respondent and the pastor of the [M] Episcopal Church are developing a curriculum for prevention of the abuse of alcohol and drugs for elementary and junior high students who attend the church. Respondent has accepted a consulting position as an independent contractor with the [   ] to develop an ordinance for the city of [G] to regulate sobriety houses. Respondent has spoken publicly on the issues of addiction in recent years in the [G] community, including as a panel speaker at the [   ] Ecumenical dinner. In addition, respondent is active in the Community Theater League and the [   ] Theater, sponsored by [A] College and volunteers his time to the marketing and public relations committee of the [G] Symphony. Respondent's dedicated community service is well-known throughout the [A] community. As stated by six witnesses testifying at the hearing on behalf of respondent, respondent's reputation for truthfulness and honesty and as a law-abiding citizen in the [G] community is excellent.

At the time respondent entered the work release program in September of 1987, he began working as a paralegal with the law firm of [N] located in [G], Pennsylvania. At the present time, respondent is divorced and supports his two sons who both attend college by working for the [N] firm and other attorneys in the [A] County area as an independent contractor. As an independent contractor, respondent researches issues and writes legal briefs in support of motions, as well as appellate court briefs. Respondent's work is supervised by the attorneys and at no time did respondent engage in the practice of law. Respondent has main-

tained his knowledge of the law through his work and by reading advance sheets.

## DISCUSSION

In the instant case, respondent committed the serious offense of possessing and delivering cocaine. The issue before the Disciplinary Board is twofold: Whether respondent's misconduct constitutes a violation of the Disciplinary Rules of the Code of Professional Responsibility as charged in the petition for discipline and a determination of the appropriate discipline to be imposed. The Hearing Committee recommended that respondent receive a three-year suspension from the practice of law retroactive to March 4, 1988. Neither respondent nor petitioner filed a brief on exceptions to the report and recommendation of the Hearing Committee. The Disciplinary Board's review of this matter is de novo. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 275, 472 A.2d 186, 188 (1983).

### A. *Disciplinary Rules Violated*

There is no dispute that respondent's conduct constitutes a violation of D.R. 1-102(A)(6) which prohibits an attorney from engaging in conduct that adversely reflects on his fitness to practice law. In his answer to the petition for discipline, respondent admits he violated D.R. 1-102(A)(6) and the record fully supports such a determination.

Respondent denies violating D.R. 1-102(A)(3) which prohibits engaging in conduct involving moral turpitude. Respondent argues that his conduct of selling cocaine was directly related to his addiction. Although the

board acknowledged respondent's addiction and subsequent rehabilitation, such facts do not excuse nor negate the nature of respondent's misconduct. Although "moral turpitude" is incapable of precise definition, the Supreme Court of Pennsylvania has spoken on this issue: "Legally, moral turpitude is defined as 'anything done knowingly contrary to justice, honesty, principle or good morals.'" *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 507 A.2d 1215, 1220 (1986), citing *Muniz v. State,* 575 S.W.2d 408, 411 (Texas 1978). It is clear that respondent's conduct involves moral turpitude. It is nationally agreed that the use and sale of cocaine is contrary to good morals. Furthermore, the record reveals that respondent knew that the sale and possession of cocaine was illegal conduct.

In regard to D.R. 1-102(A)(5)—which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice, Office of Disciplinary Counsel argued in its brief to the Hearing Committee that respondent violated this rule by his illegal use of drugs while serving in the capacity of an assistant district attorney and public defender. In support of its argument, Office of Disciplinary Counsel cites *In re Anonymous No. 60 D.B. 83,* 33 D.&C.3d 187 (1984). In that case, an assistant district attorney openly used cocaine in the presence of members of the public, consorted with known drug dealers, and pled guilty to possession of cocaine.

The Hearing Committee determined that the evidence presented at the hearing was not clear and convincing to prove that respondent's conduct constituted a violation of D.R. 1-102(A)(5). The Hearing Committee

distinguished the case cited by Office of Disciplinary Counsel by pointing to the fact that while respondent was serving as an assistant district attorney he failed to take any action against a drug dealer who showed the respondent 500 pounds of marijuana. The board concurs with the Hearing Committee's analysis of this case and its determination that respondent's conduct did not constitute a violation of D.R. 1-102(A)(5). In the instant matter, respondent did not fail to proceed against a known drug dealer while serving in his capacity as assistant district attorney.

Although the Supreme Court of Pennsylvania has not defined with exactitude the boundary of the conduct proscribed by D.R. 1-102(A)(5), a review of Pennsylvania case law reveals the parameter of the application of this rule. *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616, 622 (1975). The purpose of this rule as applied in Pennsylvania case law is to protect against any dishonest or disruptive conduct which would impede, delay or circumvent or by outward appearance, manipulate a judicial proceeding before a court of law or a disciplinary proceeding before the Disciplinary Board of the Supreme Court of Pennsylvania or an authorized investigation into a criminal matter.

Cases involving an attorney engaging in dishonest conduct before a court of law in violation of D.R. 1-102(A)(5) are as follows: *In re Anonymous 72 D.B. 83,* 35 D.&C.3d 356 (1985) (Respondent filed pleadings without regard to the truthfulness or lack thereof); *In re Anonymous 92 D.B. 86, 59 D.B. 87,* 5 D.&C.4th 225 (1989) (Respondent lied to the court in order to obtain a continuance of a hearing); *In re Anonymous*

*31 D.B. 88,* 5 D.&C.4th 308 (1989) (Respondent, representing himself in a support hearing, falsely testified that his wife had engaged in a lesbian affair and that he was not in possession of certain marital property); *In re Anonymous 121 D.B. 88,* 5 D.&C.4th 289 (1989) (Respondent assisted in advising a witness to testify falsely before the grand jury and to destroy records covered by a grand jury subpoena); *Office of Disciplinary Counsel v. Wittmaach,* 513 Pa. 609, 522 A.2d 522 (1987) (In a civil proceeding brought against respondent by his clients, respondent falsely testified under oath that his clients' signed a multiple representation agreement and produced a photocopy of the forged agreement in support of his testimony); *In re Anonymous No. 10 D.B. 79,* 14 D.&C.3d 636 (1980) (In a divorce proceeding respondent advised his client to falsely claim as her residence, an address at which she did not reside); *In re Anonymous 28 D.B. 78,* 23 D.&C.3d 603 (1981) (Respondent filed a report with the court in which he misrepresented his fee in an adoption proceeding); and *In re Anonymous 25 D.B. 84,* 36 D.&C.3d 637 (1985) (Respondent terminated an action on behalf of his client without his client's authority by utilizing a forged document).

Cases involving an attorney engaging in disruptive conduct which impedes or delays a proceeding before a court of law in violation of D.R. 1-102(A)(5) are as follows: *In re Anonymous 3 D.B. 90* (Respondent failed to respond to court orders and was held in contempt of the U.S. Bankruptcy Court for the [ ] District of Pennsylvania; and *In re Anonymous 37 D.B. 81,* 23 D.&C.3d 411 (1982) (Respondent who was appointed master in a divorce case in the Court of Common

Pleas of [   ] County, failed to render a master's report which caused the discontinuance of the case). A case which involved an attorney engaging in disruptive conduct that impeded a disciplinary matter in violation of D.R. 1-102(A)(5) is *In re [ ], 42 D.B. 80,* 20 D.&C.3d 341 (1981) in which the respondent failed to appear for an informal admonition and failed to provide an explanation for his absence.

Cases involving an attorney engaging in dishonest or disruptive conduct to impede an authorized investigation into a criminal matter in violation of D.R. 1-102(A)(5) include the following: *In re Anonymous 13 D.B. 76,* 5 D.&C.3d 210 (1977) (Respondent, in the course of receiving a traffic violation citation, committed an assault and battery on a state police officer); *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 507 A.2d 1215 (1986) (Respondent, convicted of federal drug charges refused to inform authorities of the identity of the ultimate purchaser of cocaine); and *In re Anonymous 58 D.B. 82* (Respondent failed to voluntarily disclose that he had taken the bar examination on behalf of his wife to either the Pennsylvania Board of Law Examiners or the Pennsylvania Attorney General's Office).

Cases involving an attorney engaging in conduct which gives the appearance that a judicial proceeding can be manipulated in violation of D.R. 1-102(A)(5) are as follows: *In re Anonymous 60 D.B. 83,* 33 D.&C.3d 187 (1984) (Respondent failed as a district attorney to take any action against a drug dealer who showed respondent 500 pounds of marijuana); *In re Anonymous 76 D.B. 83,* 47 D.&C.3d 138 (1987) (Respondent, as a public defender accepted from a client a non-solicited

cash gift); and *Office of Disciplinary Counsel v. Campbell* (Despite the fact such evidence did not exist, respondent informed his client that for $4,000 he could suppress fingerprint evidence).

In the instant matter, respondent sold cocaine to his client while engaged in a sole practice of law. Although respondent's conduct was a violation of the Pennsylvania Criminal Statutes, it in no way impeded, delayed, circumvented or outwardly appeared to manipulate a judicial proceeding. To charge respondent with a violation of D.R. 1-102(A)(5) under the facts presented in this case would be to make this Rule too broad. This Rule should be considered in the context of misconduct as outlined in the cases cited above.

Further support for this conclusion is found in the comments of Hazard & Hodes in their *Handbook on Model Rules of Professional Conduct.* In discussing the rule regarding engaging in conduct prejudicial to the administration of justice, Hazard & Hodes observed as follows:

"This subsection, like subsection (c), was brought forward from the Code of Professional Responsibility by the ABA House of Delegates. It overlaps with a large number of the Rules in part 3 of the Model Rules, for almost all the limits upon advocacy are designed to protect 'the administration of justice.' Asserting frivolous claims (Rule 3.1), delaying litigation (Rule 3.2), misrepresenting or falsifying evidence (Rules 3.3 and 3.4), disrupting a tribunal (Rule 3.5), and making prejudicial out-of-court statements (Rule 3.6) are all 'prejudicial to the administration of justice.' Since violation of any of these Rules is also a violation of Rule 8.4(a), Rule 8.4(d) would appear to be somewhat redundant.

"The larger problem with Rule 8.4(d) [engaging in conduct prejudicial to the administration of justice] is that other, as yet undefined, conduct will be found to be prejudicial to the administration of justice by a disciplinary authority that wishes to punish a lawyer. Few disciplinary authorities have succumbed to that temptation, but there have been cases where 'anti-establishment' or maverick lawyers have been prosecuted on that basis. To avoid this danger, Rule 8.4(d) should be construed to include only clear violations of accepted practice norms." Hazard & Hodes, *Law of Lawyering: Handbook on the Model Rules of Professional Conduct* (1985), p. 569.

## B. *Recommended Discipline*

As directed by the Supreme Court of Pennsylvania, the board's duty is to examine the nature and extent of the underlying conduct and focus its inquiry on whether respondent's conduct makes him unfit to practice law from the standpoint of protecting the public. *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 512 A.2d 607, 609 (1986). The primary purpose of our system of lawyer discipline is to protect the public, as opposed to punishing the attorney. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 281, 472 A.2d 186, 190 (1983). Sanctions are to be imposed in accord with the misconduct and based on the circumstances unique to each particular case. *Id.* at 281, 472 A.2d at 190.

The matter before the board is of a grave and serious nature. Respondent used, possessed and sold cocaine. At the time respondent used cocaine, he was an officer of the court involved with the prosecution and defense

of others for similar illegal acts. Respondent sold cocaine to his client while he was a sole practitioner. Respondent's illegal conduct, which gave rise to criminal proceedings, became generally known to the public through coverage by the press. There is no doubt that respondent's conduct had a disparaging effect on the public's confidence in our legal system. Office of Disciplinary Counsel argues that in order to restore the public confidence and enhance the public's perception that our disciplinary system respond appropriately to serious misconduct, the disciplinary system must respond strongly. Petitioner recommends disbarment. Although the board is concerned with the public's confidence in the legal system, the board will not allow the high profile nature of this case to dictate the measurement of discipline to be imposed. The board is concerned with the protection of the public and agrees with Office of Disciplinary counsel that a "strong response" is appropriate. However, the board does not believe disbarment is warranted in this case.

As stated, respondent does not have a prior disciplinary history and his misconduct was not motivated by greed or personal gain. Respondent did not sell cocaine for a monetary profit; he sold cocaine to his client, a known drug dealer, because he was an addict. Respondent explained that amongst cocaine users there is a camaraderie which compelled him to sell the cocaine to his client as a favor. Respondent believed Ms. [H] would return his favor by sharing her supply of cocaine with respondent at a later date. Respondent never sold cocaine to any other person. Respondent's cocaine and alcohol addiction is an appropriate consideration as a mitigating factor in a disciplinary proceeding. *Of-*

*fice of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894, 895-96 (1989). The fact respondent was addicted to cocaine and such addiction was a causative factor of his misconduct is evidenced by the fact the court approved respondent's participation in a treatment program in lieu of sentencing, pursuant to section 17 of the Controlled Substance, Drug, Device and Cosmetic Act (35 P.S. §§780-118). The expert testimony of [J], executive director of [I], the chemical dependence treatment facility which treated respondent in 1986, also establishes that respondent's addiction is an appropriate mitigating factor to be considered in determining the measure of discipline. Mr. [J] stated the following:

"In [respondent's] case it was seen that his alcohol and drug use progressed such that his judgment was grossly impaired to a point where he became involved in drug circles. To a sober, responsible lawyer and officer of the court, this involvement would be unthinkable, unimaginable. And yet, to a person who has alcoholism it simply becomes a fact of his existence. His sensitivity to the enormous implications of this behavior becomes diminished, numbed."

Respondent has fully admitted his wrongdoing and cooperated with Office of Disciplinary Counsel throughout the proceeding. Finally, the board considers in mitigation respondent's extensive contributions to his community and involvement in community activities designed to help persons who are suffering from addiction and other related problems. The record is replete with positive testimony of respondent's rehabilitation and present fitness to practice law.

However, the board has only considered these facts in mitigation and does not condone or excuse respondent's conduct in any way. The board acknowledges the objective of the disciplinary system to assure that the misconduct by an attorney will not occur again. The board recommends that a suspension be imposed. Suspension will place the burden on respondent to establish through the reinstatement process that he is fit to resume the practice of law. *In re Anonymous,* 49 D.B. 80, 25 D.&C.3d 14 (1983).

## CONCLUSIONS OF LAW

Respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

(1) D.R. 1-102(A)(3)—prohibiting an attorney from engaging in illegal conduct involving moral turpitude; and

(2) D.R. 1-102(A)(6)—prohibiting an attorney from engaging in conduct that adversely reflects on his fitness to practice law.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [   ] be suspended from the practice of law for a period of three years retroactive to March 4, 1988, the date on which respondent was placed on interim suspension by the Supreme Court of Pennsylvania.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Mr. Schiller and Ms. Heh dissent and would recommend a five-year suspension retroactive to March 4, 1988.

Messrs. Brown and Hill did not participate in the adjudication.

CONCURRING AND DISSENTING OPINION

SCHILLER, *Member*—I concur with the board in its findings of a violation by the respondent of D.R. 1-102(A)(3) and D.R. 1-102(A)(6). However, I also believe that respondent was in violation of D.R. 1-102(A)(5)—which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. Additionally, I disagree with the board's recommendation of a three-year suspension. I believe respondent should be suspended for a period of five years, retroactive to March 4, 1988, the date on which the Supreme Court of Pennsylvania placed respondent on interim suspension pursuant to Rule 214(d) Pa.R.D.E. Were it not for respondent's seeming rehabilitation, I would be in favor of disbarment.

DISCUSSION

The Hearing Committee determined that the evidence presented at the hearing was not clear and convincing to prove that respondent's conduct constituted a violation of D.R. 1-102(A)(5)—which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. I disagree. The respondent admits that he illegally possessed and used drugs when he was an assistant district attorney, chief public defender, and while he was running for district attorney

of [A] County. Respondent also admits consorting with a known drug dealer while working as a private attorney. Respondent's conduct of illegally using drugs while an officer of the court involved with the defense and prosecution of others for similar illegal acts, combined with the public's awareness of respondent's conduct, clearly is prejudicial to the administration of justice. I believe this matter is similar to *In re Anonymous No. 60 D.B. 83,* 33 D.&C.3d 187 (1984), cited by petitioner in its brief. In that case, an assistant district attorney who consorted with known drug dealers and was convicted of possession of cocaine was found to have violated D.R. 1-102(A)(5).

The Hearing Committee attempted to distinguish this case by pointing to the fact that the assistant district attorney failed to take action against a drug dealer with whom he had consorted. I do not agree that this fact distinguishes the case from the instant matter. Respondent failed to take any action to inform law enforcement officials about the use and dealing of drugs in which he and others were involved. Respondent exhibited a total disregard for the laws he was sworn to uphold. Thus, respondent tacitly condoned the illegal conduct committed by himself and others.

## CONCLUSION

I direct the attention of the board to the opinion of the Supreme Court in *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 507 A.2d 1215, 1221 (1986):

"The Code of Professional Responsibility embodies the standards for attorneys practicing law in this Commonwealth so that the public is protected and the in-

tegrity of the bar preserved. Respondent has flaunted those standards and violated the Code of Professional Responsibility. There is no excuse, justification or mitigation that can overcome the seriousness of the crime committed by respondent."

The above cited case dealt with an attorney involved in the sale of cocaine. Likewise, I believe this language applies to the respondent in the instant matter. Respondent has flaunted the standards embodied in the Code of Professional Responsibility. At the time respondent engaged in the illegal use of drugs, he was an assistant district attorney and in addition, a candidate for district attorney, who incredibly, suggests that he was able to give up the use of illegal drugs while he was a candidate. The Supreme Court in *Simon* also did not believe that the pressures of life faced by an attorney justifies the attorney's conduct of using or engaging in the sale of cocaine. The opinion specifically suggests that attorneys in those situations should attempt to deal with life's pressures by utilizing socially acceptable means, such as "Alcoholics Anonymous, individual psychotherapy, group therapy and reliance upon family and friends for additional support." Id. The respondent in this matter refused to participate in any of these activities at the time he engaged in his illegal conduct.

The dissent in *Simon* suggests that a per se rule of disbarment should not be adhered to. As I indicated above, if it was not for respondent's seeming rehabilitation, I would be in favor of disbarment.

In this day and age it is important that a clear message be given to the bar that the use of illegal drugs, their

sale or involvement by attorneys in drug activities is a very serious matter. The integrity of the bar in the public's eye cannot continually be tarnished by drug use or involvement with illegal drugs by attorneys. The practice of law is a privilege in the Commonwealth of Pennsylvania and with it goes awesome responsibilities. Members of the bar in general and public prosecutors, in particular, must not be allowed to debase the integrity of the legal profession and erode public confidence.

Based on the foregoing, I respectfully dissent and recommend that respondent be suspended for a period of five years, retroactive to March 4, 1988, the date on which the Supreme Court of Pennsylvania placed respondent on interim suspension pursuant to Rule 214(d) Pa.R.D.E.

Board Member Judith Heh joins in this concurring and dissenting opinion.

## ORDER

And now, November 19, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated April 5, 1991, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of three years retroactive to March 4, 1988. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen and Mr. Justice Papadakos dissent and would issue a rule to show cause why respondent should not be disbarred.